**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| ALEXIS BANTA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO.** |
| | ) | |
| ASPIRION HEALTH RESOURCES, | ) | |
| LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT**

**STATEMENT OF JURISDICTION**

1.      The jurisdiction of this Court is invoked pursuant to its general original jurisdiction and under other statutory authority. This is a suit authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.

2.      This Court has original jurisdiction, pursuant to 28 U.S.C. § 1331, as this civil action arises under the laws of the United States cited above. This Court also has original jurisdiction, pursuant to 28 U.S.C. § 1343(a), as this civil action seeks to secure the protection of, and redress the deprivation of, rights secured by Title VII and Section 1981, providing for injunctive and other relief against the illegal actions described herein.

3.      Venue is proper in this district, pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and/or Plaintiff performed work for Defendant while located in this judicial district.

4.      Plaintiff has fulfilled all conditions precedent to the institution of this action, as required under Title VII, including the timely filing of a Charge of Discrimination with the Equal Employment Opportunity Commission and receipt of a Notice of Right to Sue.

**STATEMENT OF THE PARTIES**

5.      Plaintiff Alexis Banta (hereinafter referred to as "Plaintiff" or "Banta") is a biracial Black and White female over the age of nineteen (19) years. At all times relevant to this Complaint, Plaintiff was an employee of the named Defendant.

6.      Defendant Aspirion Health Resources, LLC (hereinafter "Defendant" or "Aspirion") is an entity subject to suit under Title VII and Section 1981. Defendant conducts business in Alabama and, at all times relevant to this action, was Plaintiff's employer.

**STATEMENT OF THE FACTS**

***Introduction***

This Statement of Facts is submitted in support of Plaintiff Alexis Banta's claims against Defendant arising from race discrimination and, most significantly, retaliation. This is not a case where an employee merely disagreed with a compensation decision, complained once, and later attempted to convert ordinary workplace friction into litigation. This is a case where a highly qualified biracial Black employee raised repeated, specific complaints that she was being paid less than her similarly situated white counterparts; where the company's Chief Human Resources Officer responded not with a meaningful investigation, but with hostility, suspicion, and blame; where Plaintiff's protected activity was followed by isolation, exclusion, the stripping of her duties, the transfer of those duties to a lesser qualified employee outside of her protected class, and finally termination within thirty-five minutes of Plaintiff again complaining that she was being retaliated against.

The facts establish a direct and escalating retaliatory chain. Plaintiff complained about race-based pay disparity. Defendant resisted and minimized those complaints. Plaintiff continued to complain. Defendant then stripped Plaintiff of meaningful work, placed her in a position where

2

her performance could be criticized because her own duties had been taken from her, and ultimately terminated her employment. Defendant's explanation for the termination—that unspecified "service line leadership" no longer wanted to work with Plaintiff—does not break the causal chain. It confirms it. If Defendant created the conditions for Plaintiff to be excluded, deprived her of work, and then cited the consequences of that exclusion as the reason for firing her, Defendant did not discover a legitimate basis for termination. It manufactured one.

### *Plaintiff and Her Employment*

7.      Plaintiff began her employment with Defendant in or around May 2022 as a Senior Human Resources Generalist.

8.      As a Senior Human Resources Generalist, Plaintiff performed core human-resources functions for assigned employee groups. Her duties included, but were not limited to, employee relations, performance management, policy administration, compensation-related work, onboarding, offboarding, training, coaching leaders, handling employee concerns, and supporting management in sensitive employee-related matters.

9.      Plaintiff's role was not clerical, marginal, or interchangeable. She was entrusted with confidential human-resources information and expected to operate with judgment, discretion, and independence. Her work required her to understand employee classifications, compensation decisions, personnel changes, and employment practices affecting Defendant's workforce.

10.      Plaintiff's access to compensation-related information was not improper. It was part of her job. Defendant knew that Plaintiff, as part of her human-resources duties, had access to and used compensation information in the ordinary course of her work.

11.    Plaintiff was qualified for her position. She possessed the background, experience, and judgment necessary to perform the essential functions of her job. At all relevant times, Plaintiff was capable of performing those functions.

### *Defendant's Pay Disparities and Plaintiff's Protected Complaints*

12.    During her employment, Plaintiff became aware that similarly situated white employees were being paid more than she was despite Plaintiff's qualifications, experience, and job responsibilities.

13.    Plaintiff also became aware that Defendant was denying her compensation increases while granting or maintaining higher compensation for employees outside of Plaintiff's protected racial class.

14.    Plaintiff complained to Defendant that she was being paid less than similarly situated white counterparts.

15.    Plaintiff's complaints were not vague workplace dissatisfaction. Plaintiff specifically objected to what she reasonably believed was race-based compensation discrimination.

16.    Plaintiff's complaints constituted protected activity under Title VII and Section 1981.

17.    Rather than receiving Plaintiff's complaints as serious allegations requiring investigation and correction, Defendant treated Plaintiff as the problem.

18.    Brian Lefort, Defendant's Chief Human Resources Officer, attempted to villainize Plaintiff for reporting that her white counterparts were making more than she was despite her higher qualifications.

19. Lefort claimed or insinuated that Plaintiff had no right to know the compensation information on which her complaints were based.

20. Lefort further insinuated that Plaintiff had done something wrong by relying on compensation information, even though Plaintiff's human-resources role required her to have access to compensation-related information and to use that information in the performance of her job duties.

21. Defendant's reaction was revealing. Instead of investigating whether Plaintiff was being underpaid because of race, Defendant focused on Plaintiff's knowledge of the disparity. Instead of asking whether the pay disparity was lawful, Defendant questioned why Plaintiff knew about it. Instead of correcting the disparity, Defendant began building a retaliatory posture against the employee who had exposed it.

22. Defendant's response to Plaintiff's complaints chilled, burdened, and punished Plaintiff's exercise of her protected rights.

### *The May 13, 2025 Protected Complaint*

23. On or around May 13, 2025, Plaintiff again engaged in protected activity when she complained to Lefort about being paid significantly less than her similarly situated white counterparts.

24. Plaintiff specifically stated her concern that race was the reason she was not receiving the same pay as her counterparts.

25. However, Lefort dismissed Plaintiff's concerns.

26. Upon information and belief, Defendant failed to conduct a meaningful, good-faith investigation into Plaintiff's race-discrimination complaint.

27. Defendant did not correct Plaintiff's compensation.

28. Defendant did not restore equity.

29. Defendant did not protect Plaintiff from retaliation.

30. Instead, Defendant escalated.

### *The Retaliatory Isolation, Exclusion, and Stripping of Plaintiff's Duties*

31. Following Plaintiff's protected complaints, Defendant subjected Plaintiff to a campaign of retaliation.

32. The retaliation included forced exclusion and isolation.

33. Defendant stripped Plaintiff of job duties that were material to her role and central to her ability to succeed in her position.

34. Defendant then assigned Plaintiff's duties to a lesser qualified employee outside of Plaintiff's protected class who had not engaged in protected activity.

35. The stripping of Plaintiff's duties was not a neutral reassignment. It was a retaliatory act with predictable consequences.

36. By removing Plaintiff's duties, Defendant deprived Plaintiff of the ability to perform the full scope of her role.

37. By isolating Plaintiff from service lines and employee groups, Defendant undermined Plaintiff's ability to maintain the relationships necessary to perform her human-resources function.

38. By excluding Plaintiff and then allowing others to treat Plaintiff as ineffective because she had been excluded, Defendant created a self-fulfilling justification for discipline and termination.

39. Defendant's retaliation was particularly damaging because Plaintiff's job depended on access, trust, communication, and continued involvement with employee groups and leadership.

A human-resources professional cannot successfully support service lines after the employer itself strips the HR professional of work, access, and support.

40. At all relevant times, Defendant was aware of this happening. Defendant nevertheless used Plaintiff's forced exclusion as a weapon.

41. As the retaliation intensified, Plaintiff's mental health was severely impacted, and she suffered each and every day she was subject to the illegal treatment.

42. Plaintiff nevertheless continued to oppose Defendant's unlawful conduct.

43. During this same period, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging race discrimination and retaliation arising from Defendant's discriminatory pay practices and retaliatory treatment. Thus, by the time Plaintiff made her May 27, 2025 retaliation complaint, Defendant was already on notice that Plaintiff had formally invoked the EEOC process, and her Charge remained pending within the EEOC's administrative investigatory period.

### The May 27, 2025 Retaliation Complaint

44. On or around May 27, 2025, Plaintiff again engaged in protected activity yet again.

45. Plaintiff complained to Lefort that she had been experiencing retaliation since filing her then-pending EEOC Charge and since complaining internally about Defendant's discriminatory pay practices.

46. Plaintiff specifically explained that her duties had been stripped from her.

47. Plaintiff further explained that the stripping of her duties negatively impacted her job performance.

48. This complaint placed Defendant on direct notice that Plaintiff believed Defendant was retaliating against her for protected activity.

7

49.   Defendant did not investigate the retaliation complaint.

50.   Defendant did not pause to review whether Plaintiff's duties had been improperly removed.

51.   Defendant did not restore Plaintiff's responsibilities.

52.   Defendant did not protect Plaintiff from further retaliation. Instead, Defendant subjected her to the worst adverse action yet—immediate termination.

### Termination Thirty-Five (35) Minutes Later

53.   Just *thirty-five (35) minutes* after Plaintiff complained that she was being retaliated against—and while her Charge of Discrimination remained pending within the EEOC's administrative investigatory period—Defendant abruptly terminated her employment.

54.   Plaintiff had no prior warning that her employment would be terminated that day.

55.   The timing of the termination is not merely suspicious. It is damning.

56.   A decision to terminate an employee thirty-five minutes after she complains that she is being retaliated against for protected activity is powerful evidence of causation, pretext, and retaliatory motive.

57.   Defendant claimed that Plaintiff was being terminated because her service line leadership did not want to work with her anymore. However, that explanation reeked of pretext.

58.   First, to the extent there were alleged issues with service line leadership, those issues were caused or materially contributed to by Defendant's retaliatory stripping of Plaintiff's duties, exclusion from work, and isolation from employee groups. Simply put, Defendant unlawfully removed Plaintiff's duties, isolated her from the work needed to succeed, and then cited the predictable consequences of that removal and isolation as a legitimate basis for termination.

59. Second, Defendant treated Plaintiff differently than employees who had not engaged in protected activity. More specifically, Plaintiff's similarly situated counterparts who were outside of her protected class and/or who did not engage in protected activity had service-line issues as well; however, they were given an opportunity to correct perceived issues. Plaintiff, on the other hand, was not given that same opportunity.

60. More specifically, Plaintiff was not placed on a meaningful corrective path nor was she  given a fair chance to address any alleged concerns. Rather, Plaintiff was fired within thirty-five (35) minutes of making a retaliation complaint.

61. Third, Defendant's asserted explanation is vague, subjective, and conveniently untethered to a specific policy violation. Defendant's reliance on unnamed or generalized "service line leadership" dissatisfaction allowed Defendant to hide retaliatory motive behind subjective impressions that Plaintiff could not meaningfully confront before her termination.

62. Fourth, Defendant's explanation ignores the retaliatory sequence that preceded the termination: Plaintiff complained about race-based pay disparity; Defendant questioned and blamed Plaintiff for knowing about the disparity; Plaintiff continued to complain; Defendant stripped Plaintiff's duties; Plaintiff complained that the stripping of duties was retaliation; and Defendant fired her thirty-five (35) minutes later.

63. That sequence is not coincidence. It is retaliation.

64. After Defendant terminated Plaintiff's employment, Plaintiff amended her EEOC Charge to include Defendant's continued retaliatory conduct, including the stripping of her job duties, forced exclusion, isolation, and termination.

65. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, loss of earning capacity, emotional distress, humiliation, anxiety,

9

reputational harm, inconvenience, loss of enjoyment of life, and other compensatory damages in amounts to be established at trial.

66. Defendant's conduct was intentional, malicious, reckless, and/or in reckless disregard of Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

**FIRST CAUSE OF ACTION**
**Race Discrimination**
**under Title VII of the Civil Rights Act of 1964**

67. Plaintiff re-alleges and incorporates by reference paragraph nos. 7-64 with the same force and effect as if fully set forth herein and further states as follows:

68. Plaintiff is biracial, Black and White, and is a member of a protected class.

69. Plaintiff was qualified for her position as a Senior Human Resources Generalist.

70. Defendant subjected Plaintiff to adverse employment actions, including but not limited to denying Plaintiff equal compensation, stripping Plaintiff of duties, excluding and isolating Plaintiff, assigning her duties to a lesser qualified employee outside of her protected class, and terminating her employment.

71. Similarly situated white employees and/or employees outside Plaintiff's protected racial class were treated more favorably, including with respect to pay, work assignments, corrective opportunities, and continued employment.

72. Plaintiff's race was a motivating factor in Defendant's actions.

73. Defendant is directly liable for the actions and/or inactions of its managers and agents.

74. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of

employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

## SECOND CAUSE OF ACTION
### Race Discrimination
### under 42 U.S.C. § 1981

75.     Plaintiff re-alleges and incorporates by reference paragraph nos. 7-64 with the same force and effect as if fully set forth herein and further states as follows:

76.     Plaintiff is biracial, Black and White, and is a member of a protected racial class.

77.     At all times relevant herein, Plaintiff had an employment relationship with Defendant, which constituted a contractual relationship protected by Section 1981.

78.     Plaintiff was qualified for her position and performed work for Defendant pursuant to that employment relationship.

79.     Defendant intentionally discriminated against Plaintiff because of race by denying her equal compensation, stripping her duties, excluding and isolating her, assigning her duties to a lesser qualified employee outside of her protected class, and terminating her employment.

80.     Plaintiff's race was a but-for cause of Defendant's discriminatory actions in violation of Section 1981.

81.     Defendant is directly liable for the actions and/or inactions of its managers and agents.

82.     As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

## THIRD CAUSE OF ACTION
### Retaliation

11

**under Title VII of the Civil Rights Act of 1964**

83.    Plaintiff re-alleges and incorporates by reference paragraph nos. 7-64 with the same force and effect as if fully set forth herein and further states as follows:

84.    Plaintiff engaged in protected activity when she complained that she was being paid less than similarly situated white employees.

85.    Plaintiff further engaged in protected activity when, on or around May 13, 2025, she complained to Lefort that race was a reason she was not receiving the same pay as her counterparts.

86.    Plaintiff further engaged in protected activity when she filed an EEOC Charge complaining of race discrimination and retaliation.

87.    Plaintiff further engaged in protected activity when, on May 27, 2025, she complained to Lefort that she was experiencing retaliation after engaging in protected activity.

88.    Defendant was aware of Plaintiff's protected activity.

89.    After Plaintiff engaged in protected activity, Defendant subjected her to materially adverse actions, including but not limited to increased hostility, forced exclusion, isolation, stripping of her job duties, reassignment of her duties to a lesser qualified employee outside of her protected class, refusal to fairly investigate her complaints, and termination.

90.    Defendant's adverse actions would dissuade a reasonable employee from making or supporting a charge of discrimination.

91.    The causal connection between Plaintiff's protected activity and Defendant's adverse actions is supported by, among other things, close temporal proximity, Defendant's hostility toward Plaintiff's complaints, Defendant's failure to meaningfully investigate, Defendant's shifting and subjective explanations, Defendant's differential treatment of employees

12

who did not engage in protected activity, and Defendant's termination of Plaintiff thirty-five minutes after her May 27, 2025 retaliation complaint.

92.     Defendant's asserted justification for termination was pretextual.

93.     Defendant's retaliation was the but-for cause of Plaintiff's termination and other materially adverse actions.

94.     Defendant is directly liable for the actions and/or inactions of its managers and agents.

95.     As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

**FOURTH CAUSE OF ACTION**
**Retaliation**
**under 42 U.S.C. § 1981**

96.     Plaintiff re-alleges and incorporates by reference paragraph nos. 7-64 with the same force and effect as if fully set forth herein and further states as follows:

97.     Plaintiff engaged in protected activity under Section 1981 when she complained that Defendant was paying her less than similarly situated white employees.

98.     Plaintiff further engaged in protected activity when she opposed race-based compensation discrimination and complained that Defendant was retaliating against her for opposing such discrimination.

99.     Defendant was aware of Plaintiff's protected activity.

100.     Following Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse actions, including but not limited to stripping her duties, isolating her, excluding her from

13

work, assigning her duties to a lesser qualified employee outside of her protected class, refusing to provide the same corrective opportunities afforded to employees who did not engage in protected activity, and terminating her employment.

101. Defendant's retaliatory conduct impaired Plaintiff's contractual employment relationship and deprived Plaintiff of equal rights in the making, performance, modification, and termination of that relationship.

102. Defendant's asserted justification for its actions was pretextual.

103. Plaintiff's protected activity was a but-for cause of Defendant's retaliatory actions.

104. Defendant is directly liable for the actions and/or inactions of its managers and agents.

105. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays this Court will assume jurisdiction of this action and, after trial, provide relief as follows:

1. Issue a declaratory judgment that the employment practices, policies, procedures, conditions and customs that led to the discrimination and retaliation by Defendant are violative of the rights of Plaintiff as secured by the Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

14

2. Grant Plaintiff a permanent injunction enjoining Defendant, its respective agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title VII and 42 U.S.C. § 1981.

3. Enter an Order requiring Defendant to make Plaintiff whole by awarding Plaintiff back pay (plus interest), reinstatement or front pay in lieu thereof, compensation for loss of wages and benefits, lost seniority, and pension benefits and nominal, compensatory and punitive damages.

4. Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses incurred by this litigation.

5. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief, is the only means of securing adequate relief.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY
ON ALL ISSUES TRIABLE BY JURY**

Respectfully submitted,

*/s/Nicki Lawsen*
Sidney Jackson
Samuel Fisher
Nicki Lawsen
*Attorneys for the Plaintiff*
**Wiggins, Childs, Pantazis, Fisher
& Goldfarb, LLC**
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
sjackson@wigginschilds.com
sf@wigginschilds.com
nlawsen@wigginschilds.com

15